DAVID S. YOUNG and wife

v.

SYLVESTER HILL and wife and others.

Lands were conveyed to a mortgagee in consideration of his cancelling a mortgage thereon given by the grantor and his wife. They fraudulently concealed the existence of a judgment obtained against them by collusion, and levied on the premises the day before the transfer.—*Held*, that the cancellation should be set aside, and the lien of the mortgage re-imposed on the lands, and that the judgment creditor be restrained from selling the premises except subject to the mortgage.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. H. C. Pitney*, for complainants.

*Mr. W. W. Cutler*, for defendants.

THE CHANCELLOR.

The bill is filed for relief, under the following circumstances. . The complainant, David S. Young, was, in April, 1877, the owner of a farm in Morris county. He then exchanged that property with the defendant, Catharine E. Hill, for land in Morristown belonging to her, and which appears to have been heavily mortgaged, and $3,000 secured by the bond of her and her husband, and their mortgage

upon the farm in favor of his wife. The farm was conveyed subject to a mortgage for $600 and interest then thereon. About the middle of June, 1878, it was agreed, between the complainants and Hill and his wife (the proposition came from Hill), that the latter should convey the farm to Young's wife, in satisfaction of their liability on the bond of $3,000. The subject of a reconveyance of the farm had been discussed between Hill and Young for about eight weeks before that time. When they came to an agreement in June, as before stated, Hill appointed the 9th of July following to make the exchange. On that day the conveyance was made, and the bond and mortgage were delivered up by the complainants to Hill and his wife, who, thereupon, caused the mortgage to be cancelled of record. Before the conveyance was accepted, Young carefully inquired whether the Hills had put any encumbrances upon the farm, and they said there was nothing on it that they knew of. According to the testimony of the lawyer who drew the deed, and in whose office the papers were exchanged, the inquiry was whether there were any judgments on the place, and the answer was that there were none. Hill says the inquiry was as to judgments, and he replied that there were none that he knew of. On the assurance that there were no judgments upon the property, the conveyance was accepted, and the bond and mortgage were then delivered up. The deed is without covenants.

There was, in fact, at that time, a judgment in Morris circuit court, which had been entered the day before, against Hill and his wife, in favor of William T. Hill, his brother, for $503.93 damages, and $39.05 costs, on which an execution was issued and levied on the farm on the same day on which the judgment was entered. The suit in which the judgment was entered was brought on a note in favor of William T. Hill for $500, dated May 21st, 1878, and signed by Sylvester Hill and his wife, and payable on demand. It was begun by summons on the 28th of May, 1878, seven days after the date

Young v. Hill.

of the note. The summons was returnable June 6th, 1878. The declaration was filed on the return day of the writ. Service of the declaration on that day was acknowledged by the defendants, and Sylvester Hill made affidavit that on that day he served a copy of the declaration on his wife. The 6th of July was Saturday. The judgment was entered on Monday, the 8th, the earliest day on which it could, by the practice of the court, be entered, without consent of the defendants. The complainants did not hear of the existence of the judgment until September following. The bill is filed by Young and his wife, against Sylvester Hill and his wife and William T. Hill, and prays that the judgment may be declared fraudulent and void as against the farm, and that William T. Hill may be perpetually enjoined from proceeding to enforce or collect it out of that property, and may be ordered to release the farm from any lien which it may create thereon, or that the cancellation of the mortgage may be declared of no effect, and the mortgage re-instated as against the judgment, and that William T. Hill may be decreed to redeem and pay off the mortgage before enforcing his judgment against the farm.

That the complainants made careful inquiry of Sylvester Hill and his wife as to whether any judgments had been recovered against them which would be a lien upon the farm, is proved by the testimony on both sides. Had they known of the existence of the judgment, they would not have accepted the deed and given up the bond and mortgage. They relied upon the statement made by Sylvester Hill and his wife, that there was no judgment, to their knowledge. But there was, in fact, a judgment at that time, which had been entered the day before, under proceedings which they themselves had facilitated and hastened, and at that moment there was a levy on the farm under an execution on that judgment. The evidence is extremely conducive to the conclusion that they could not have been ignorant of the existence of the judgment, and that it was their purpose not to admit its existence to the

complainants. It was founded on a note given by them in May, while the subject of the reconveyance was being talked about by them and the Youngs. The note was, as before stated, for $500. Of the amount, $275 were, it is alleged, for borrowed money, said to have been lent in various sums, the smallest from $5 to $10, and the largest $30; but no memorandum in writing of the loans was kept by either or any of the parties. The evidence of the existence of the alleged debt for borrowed money is by no means satisfactory. The note was payable on demand, and suit was brought on it within a week after its date. The proceedings in the suit were advanced to judgment by the aid of Sylvester Hill and his wife, they acknowledging service of the declaration, and he making affidavit that he had served the declaration on his wife. The agreement for reconveyance was made about the middle of June, and Sylvester Hill fixed as the time for making the reconveyance, the day after the day on which the plaintiff in the suit on the note would be entitled to judgment by the practice of the court. When, after the reconveyance had been made, an acquaintance of his said to Sylvester Hill that he thought he was foolish that he did not get the Mill street property (part of the property conveyed to Young's wife in the original transaction), as he might have done in addition to the bond and mortgage. Hill replied that Young " felt that he was smart, but if he did not look out he would get his fingers burnt before he got through." Mrs. Hill said to the same person, when he said to her that by the conveyance she had lost everything, " No, we have got the judgment for $500, " referring to the judgment in favor of William T. Hill. The evidence is most persuasive and convincing, notwithstanding the testimony of Sylvester Hill to the contrary, that they did know of the existence of the judgment, or had reason to believe that it had been entered.

It is urged, however, that if it be held that they misled the complainants, that fact will not deprive William T. Hill of his rights, or prejudice him in his assertion of them. But

Young *v.* Hill.

the evidence leads to the conclusion that there was com-
plicity between him and them in the recovery of the judg-
ment, and that his and their object was, by means thereof,
to circumvent and defraud the complainants.

It is urged that the complainants were guilty of negligence
in not searching the records to ascertain whether there were,
any judgments, but if the defendants conspired to circumvent
the complainants by means of the judgment, they are in no
situation to impute negligence to the complainants.

In *Miller* v. *Wack, Sax. 204,* it was held that the improper
and fraudulent cancellation of record of a prior mortgage
without payment or satisfaction, and without consent of the
mortgagor, would not extinguish it as against a subsequent
encumbrancer, or give him any advantage.    See, also,
*Trenton Banking Co.* v. *Woodruff, 1 Gr. Ch. 117 ; Garwood* v.
*Eldridge, Id. 145*; and *Harris* v. *Cook, 1 Stew. 345.*

In *Garwood* v. *Eldridge* it was, indeed, held that one who
purchased land on the representation of the grantor that
certain mortgages were the only encumbrances upon it,
and, at the request of the latter, applied the entire purchase-
money to the payment of those mortgages, and subsequently
found that there was a valid subsisting judgment against the
land, was not entitled to relief in equity, though the grantor
was wholly insolvent, so that the grantee had no remedy on
the covenants in his deed; but that case differs in its cir-
cumstances from this.    There the grantee applied the pur-
chase-money to paying off the mortgages, and caused the
mortgages to be cancelled of record.    Here it is a mort-
gagee who merely accepts what was substantially a release
of the equity of redemption in discharge of the mortgagor's
liability for the mortgage debt.    In that case relief was
sought on the ground that the grantee caused the mortgages
to be cancelled unwittingly and without a knowledge of the
legal effect of the act.    The court held that if he, indeed,
made such a mistake, it was a mistake as to the law, and
would not avail him, and that he was negligent in not
examining the records for judgments against the property.

Young *v.* Hill.

There was no fraud on the part of the judgment creditor in that case. The case was complicated, too, by the sale of the land under the judgment. Here the mistake was merely as to the existence of the judgment, and the evidence that William T. Hill was guilty of fraud in the transaction is very cogent. That case, it may be remarked, expressly recognizes the undoubted right to relief in equity where there is a mistake in the facts as well as of law, or some suppression of the truth, or fraud or contrivance. See, also, on this point, *Green* v. *M. & E. R. R. Co., 1 Beas. 165*, and *Macknet* v. *Macknet, 2 Stew. 52.*

There is another consideration of great weight. The complainants intended by the reconveyance merely to acquire and so extinguish the equity of redemption. Had they supposed that the mortgage was essential to their security against any intervening encumbrance, they would not have consented to its cancellation. Young swears that he acted as agent for his wife in the transaction, and that he would not have given up the mortgage to be cancelled if he had known of the judgment, or that the mortgage would be of any use to him, and that he would not have delivered up the mortgage had they been aware of the existence of the judgment. They gave it up upon the representation of the mortgagors that there were no judgments. It was no part of the bargain that the mortgage should be cancelled. It was the liability of the Hills that was to be discharged. Sylvester Hill gives as his reason for procuring the cancellation of the mortgage, that he supposed that that was necessary to the extinguishment of their liability for the payment of the mortgage debt. Under such circumstances equity will, if it can be done without prejudice to third parties, set aside the cancellation and re-instate the mortgage and give the mortgagee actual or equitable possession of it for the protection of his title. The mere fact that it has been given up and cancelled, will not render the court powerless to grant the relief. *Chilver* v. *Weston, 12 C. E. Gr. 435;*

Young *v.* Hill.

*Stantons* v. *Thompson, 49 N. H. 272; Spaulding* v. *Crane, 46 Vt. 292; Jones on Mort.* §§ *869, 873.*

Here no rights of third parties intervene to forbid the granting of the relief. The legal advantage which William T. Hill has by the cancellation obtained, he ought not, in conscience, to be permitted to retain. There is, as before stated, abundant reason for believing that he obtained it through fraud upon the complainants; that the judgment is but the means devised by him and Sylvester Hill and his wife to compel the complainants to pay for the equity of redemption of the property $500 which they never agreed nor expected to pay, and which it was not contemplated by the agreement that they should pay; that it was a mere artifice designed to extort that money from them, and intended for no other purpose whatever. Of course an advantage so obtained cannot be retained in equity. *Eyre* v. *Burmeister, 10 H. of L. 96.*

It is urged, on behalf of William T. Hill, as an equitable consideration in his favor, that part of the claim for which the note was given was for work done on one of the houses conveyed to Young's wife by Sylvester Hill and his wife in the original transaction, and that he delayed, at Young's request, proceeding upon his lien until the power of enforcing it was lost. But William T. Hill himself testifies that he permitted the time to elapse, and lost his power of enforcing the lien, through his own forgetfulness.

The complainants are entitled to the relief which they seek. The cancellation will be annulled and the mortgage re-instated, and Sylvester Hill and his wife will be ordered to deliver the mortgage up to them, that they may hold it as a muniment of title, and William T. Hill will be restrained from selling the property under his judgment, except subject to the mortgage.

The complainants are entitled to costs.