NORTH STAR CENTER, INC. v.
SIBLEY BOWL, INCORPORATED.

205 N. W. 2d 331.

March 16, 1973—No. 43732.

*Mordaunt, Walstad, Cousineau & McGuire* and *F. Robert Kolacke*, for appellant.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, J. Richard Bland*, and *O. C. Adamson II*, for respondent.

PER CURIAM.

Defendant appeals from a judgment requiring it to reimburse plaintiff for damages incurred by a third-party tenant as a result of a fire in the premises which defendant leased from plaintiff. Plaintiff was obligated to indemify the third party pursuant to the terms of a lease agreement between them, and recovery from defendant was allowed under the indemnity provisions in a lease agreement between the parties hereto which was executd by defendant without knowledge of the prior indemnity agreement between plaintiff and the third-party tenant. We affirm.

This matter was submitted to the trial court below on stipulated facts. Plaintiff was the owner and operator of a shopping center. On October 30, 1958, it leased a portion of its premises

to W. T. Grant Company (Grant). The following language was included in the lease:

"As this Lease does not cover the basement in Tenant's building on the demised premises, Landlord agrees to indemnify and hold harmless the Tenant of and from any loss, damage or injury to persons or property including the Tenant's merchandise and fixtures arising out of the occupancy of said basement by the Landlord and others."

On April 27, 1961, plaintiff leased to defendant the basement area referred to in the indemnity provision of the lease with Grant. At the time of the execution of the lease agreement between plaintiff and defendant, the following indemnity provision was included:

"Lessee further covenants and agrees to hold the lessor free and harmless from all claims, damages, suits or causes of action resulting from injuries to persons or property and arising thereon or out of the use, occupancy or condition of the leased premises * * *."

The stipulated facts provide, and the trial court found, that at the time of the execution of its lease defendant was unaware of the indemnity provision in the lease between plaintiff and Grant.

On June 18, 1965, a fire occurred on the leased premises of defendant, the cause of which was undetermined, and the property of Grant was damaged as a result of the fire. Plaintiff settled the claim pursuant to the indemnity agreement in the lease to Grant and brought this action against defendant pursuant to the terms of the indemnity agreement included in their lease.

Defendant contends that plaintiff's action seeks to recover under a separate and remote contractual agreement to which defendant was not a party and of which it had no knowledge. The trial court correctly found that the language of the agreement was free of ambiguity and that both parties were on an equal footing as to bargaining position and neither party was dominant

in the negotiation proceedings. Where there is no ambiguity in the written terms of a contract, construction by a trial court or an appellate court is inappropriate. The Telex Corp. v. Data Products Corp. 271 Minn. 288, 135 N. W. 2d 681 (1965).

Defendant concedes that the contract language is free of ambiguity. However, it contends that there was no meeting of the minds on the question of the prior indemnity agreement. In determining this question, the standard to be followed is objective and not subjective, and it is the expressed mutual assent rather than actual mutual assent which is the essential element in the formation of contracts. Cederstrand v. Lutheran Brotherhood, 263 Minn. 520, 117 N. W. 2d 213 (1962).

Absent ambiguity, fraud, or misrepresentation, a mistake of one of the parties alone as to the subject matter of the contract is no ground for rescission. See, Standard Heating Co. v. Reichert, 222 Minn. 492, 25 N. W. 2d 87 (1946). However, a contract may be avoided by one of the parties for his own mistake of fact when such mistake was caused by the inequitable conduct of the other contracting party. In Becker v. Bundy, 177 Minn. 415, 417, 225 N. W. 290 (1929), the court held that if a party conceals a fact material to the transaction, and peculiarly within his own knowledge, knowing that the other party acts on the presumption that no such fact exists, it is as much of a fraud as if the existence of such fact were expressly denied.

Under the stipulated facts of this case, failure of the plaintiff to disclose the prior indemnity agreement cannot be construed to be the withholding of a material fact. The existence or non-existence of a prior indemnity agreement in no way increases the contractual obligation of defendant undertaken in its lease agreement. The loss that occurred was the type of loss that was clearly contemplated under the terms of the indemnity provision in the lease executed by plaintiff and defendant. Defendant was not forced to sign the lease but willingly did so and agreed to the indemnity provision, and there is no reason why that provision cannot be given full force and effect. Cf. Lowry Hill Properties,

Inc. v. Ashbach Const. Co. 291 Minn. 429, 194 N. W. 2d 767 (1971).

Defendant cites Southern Cal. Gas Co. v. Ventura Pipe Line Const. Co. 150 Cal. App. 2d 253, 309 P. 2d 849 (1957). In that case, General Petroleum Corporation gave an easement on its property to the plaintiff to install a pipe line. The plaintiff agreed to indemnify General Petroleum against all claims arising from the exercise of the easement. The plaintiff then hired the defendant to install the pipe line and defendant executed an indemnity agreement to plaintiff. One of the defendant's employees was killed when he struck and broke a gas line during the construction work. His widow sued General Petroleum for wrongful death. She did not recover but the litigation costs were paid by the plaintiff under the hold-harmless agreement and the plaintiff then brought action against the defendant for reimbursement under their indemnity contract. In that case it was also stipulated that the defendant was not aware of the prior indemnity agreement between the plaintiff and General Petroleum. The appellate court in reversing the decision of the trial court held that there was no substantial evidence to support the finding that the parties contemplated and intended that defendant would be required to indemnify plaintiff against a claim such as the one asserted. The appellate court held, rather, that the type of liability involved was not one of those things concerning which it appeared the parties had intended to contract. This determination distinguishes that case from the case before us since the damages involved here were of the nature contemplated by the parties at the time of the execution of the indemnity agreement.

Affirmed.