**TCF BANKING & SAVINGS, F.A., Respondent,**

v.

**LOFT HOMES, INC., Appellant,**

**Kenneth Wilkinson, in his capacity as Anoka County Sheriff, Respondent,**

**John Does, 1–50, Defendants.**

**No. C8–88–2368.**

Court of Appeals of Minnesota.

May 16, 1989.

Review Denied June 21, 1989 and July 12, 1989.

Stephen P. Kelley, Bradley John Schmidt, Mackall, Crounse & Moore, Minneapolis, for TCF Banking & Sav., F.A.

James A. Wellner, James H. Gilbert, Meshbesher, Singer & Spence, Ltd., Minneapolis, for Loft Homes, Inc.

Robert M.A. Johnson, Anoka Co. Atty., Anthony C. Palumbo, Asst. Co. Atty., Anoka, for Kenneth Wilkinson, in his capacity as Anoka County Sheriff.

Heard, considered and decided by HUSPENI, P.J., and CRIPPEN and LESLIE,* JJ.

## OPINION

HUSPENI, Judge.

Mortgagor appeals from the trial court's grant of summary judgment rescinding a mortgage foreclosure sale. Because we find a material fact issue regarding the value of unredeemed properties which re-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

main available to mortgagee to satisfy the mortgage debt, interest and costs of first foreclosure, we affirm in part, reverse in part and remand.

## FACTS

In May 1985, appellant Loft Homes, Inc. obtained a construction loan for $1,400,000 from respondent TCF and mortgaged four parcels of realty:

Parcel 1:  Unit numbers 1269 * * *

Parcel 2:  Lot 2, Block 1, Loft Homes Addition,

Parcel 3:  Lot 3, Block 1, Loft Homes Addition,

Parcel 4:  Lot 1, Block 2, Loft Homes Addition.

Parcels 2 and 3 have had residential apartment buildings constructed on them. Parcel 4 is unimproved.

In December 1986, appellant defaulted on the note secured by the mortgage. Because the value of the subject properties was thought to exceed the debt, respondent decided to foreclose by advertisement. By letter, respondent told its counsel:

Bids [at foreclosure] should be made as follows:

Block 2, Lot 1—Unimproved land $40,000 [Parcel 4]

Block 1, Lot 1—One Condominium unit $36,000 [Parcel 1]

Block 1, Lots 2 and 3—balance of debt plus attorneys fees and costs less $76,000 [Parcels 2 and 3].

Due to a clerical error, the following bids were actually made and accepted at the foreclosure sale:

Parcel 1:  $36,000

Parcel 2:  $40,000

Parcels 3 and 4:  $1,387,995.11

The value of parcel 2 was at least $600,000. When appellant's president noticed the gross disparity between the value of parcel 2 and the bid, he first thought the mistake to be the sheriff's; he later learned the documents were drawn by someone other than the sheriff. When appellant attempted to redeem parcel 2 for $40,000 plus costs, the sheriff did not allow redemption because he was unable to verify the accuracy of the tendered redemption amount.

The following day, respondent filed a complaint seeking reformation of the sheriff's certificate of the foreclosure sale or rescission of the sale. Appellant's subsequent attempt to redeem by tendering a check for $41,700 was refused by respondent and ultimately a temporary injunction issued preventing redemption pending a final decision on the merits.

Respondent's motion for summary judgment for reformation of the sheriff's certificate of foreclosure sale to reflect its intended bids was denied. Its motion for summary judgment seeking rescission of the foreclosure sale was granted.

In opposing summary judgment, appellant asserted that if its redemption of parcel 2 had been allowed, respondent would still have retained the following property and value:

| | |
|---|---|
| Unit 1269 | $    45,000 |
| Parcel 3 | $1,380,000 |
| Parcel 4 | $    50,000 |
| Rents from parcel 3 | $    70,041.66 |
| Amounts from Redemption | $    41,704.59 |
| | |
| Total value | $1,586,746.25 |
| Total debt | $1,527,195.38 |

The trial court did not address these figures in awarding summary judgment to respondent.

## ISSUES

1. Did the trial court err in granting respondent's motion for summary judgment for rescission of the mortgage foreclosure sale of August 26, 1987?

2. Is a mortgagee otherwise entitled to rescission of a foreclosure sale barred from equitable relief because of the possibility of a legal action against a party other than from whom the equitable remedy is sought?

## ANALYSIS

The standard of review for summary judgment is whether the trial court properly applied the law and whether there are any genuine issues of material fact. *Betlach v. Wayzata Condominium,* 281

N.W.2d 328, 330 (Minn.1979). The evidence is viewed in the light most favorable to the non-prevailing party. *Hauser v. Mealey,* 263 N.W.2d 803, 805 n. 1 (Minn.1978).

I.

In finding no issue of material fact and awarding summary judgment, the trial court relied in part upon *Romkey v. Saumweber,* 170 Minn. 438, 212 N.W. 816 (1927), and *Peterson v. First National Bank of Ceylon,* 162 Minn. 369, 379, 203 N.W. 53, 56–57 (1925).

*Peterson* involved a mortgage foreclosure on a single property worth $21,000 with a purchase money mortgage of $14,-400. Due to a mistake, only $835.50 was bid at the foreclosure sale and most of the value of the security of over $14,400 was lost to the mortgagee. Various successors to the mortgagors later redeemed, the last for only $884.67, with knowledge of mortgagee's erroneous bid. *Peterson* at 370–74, 203 N.W. at 53–54.

The *Peterson* court considered the following equities in deciding whether to set aside a mortgage foreclosure sale:

> (1) A blameless plaintiff fallen into serious error * * *, which promises a disastrous result, wholly unintended by any of the parties to the transaction * * *; (2) absence of negligence of the person seeking relief; (3) defendants with knowledge of the mistake attempting to secure by inequitable conduct an unconscionable advantage of plaintiff and to enrich themselves unjustly at his expense; (4) the ability of the court to restore the status quo as to all of the interests involved.

*Id.* at 379, 203 N.W. at 56–57.

While recognizing *Peterson* as the relevant standard, we apply its equities in a sequence different from that in *Peterson.*

### a. *Respondent's negligence*

Preliminarily, we note that the "blameless plaintiff" component of the first equity may in this case be subsumed under the "negligence" analysis of the second equity.

Appellant argues that respondent negligently failed to review its attorney's work, citing *Hippe v. Duluth Brewing and Malting Co.,* 240 Minn. 100, 59 N.W.2d 665 (1953); *Gibson v. Nelson,* 111 Minn. 183, 126 N.W. 731 (1910); and *Vallentyne v. Immigration Land Co.,* 95 Minn. 195, 103 N.W. 1028 (1905). This reliance is misplaced as these cases do not specifically address whether a mortgagee must review its attorney's work in foreclosure proceedings to avoid being judged negligent.

More significantly, both *Romkey* and *Peterson* allowed rescission where there had been attorney error in foreclosure sale bids. *Romkey* 170 Minn. at 439–40, 212 N.W. at 816; *Peterson* 162 Minn. at 370–71, 203 N.W. at 53.

### b. *Unjust enrichment at respondent's expense*

■ Appellant knew of the mistake in the bid and attempted to take advantage of it. Neither *Romkey* nor *Peterson* requires that a mortgagor know how the mistake happened. The offensive behavior in those cases involved the mortgagor, aware of a mistake, attempting to redeem property for a fraction of its real value. Such behavior has also occurred here.

Appellant argues that because its actions were not unlawful, the doctrine of unjust enrichment cannot be invoked against it.[1] We cannot agree. The *Romkey* court found no unlawful action by mortgagor, but still granted rescission. Here, unless

---

1. Appellant's reliance on *Sheasgreen Holding Co. v. Dworsky,* 181 Minn. 79, 231 N.W. 395 (1930) is misplaced. In equating "unjust" enrichment with "unlawful" enrichment the *Sheasgreen* court was referring to an equitable maxim. In the sentence immediately following the language cited by appellant that court said "This maxim is without application to the instant case." *Id.* at 81, 231 N.W. at 396. While we recognize that the court in *First National Bank* of St. Paul v. Ramier, 311 N.W.2d 502, 504 (Minn.1981) relied in part on *Sheasgreen* to deny relief based on unjust enrichment, *Ramier* involved a purported constructive trust. That court found no intent to create a security transaction or equitable mortgage. Here, there is clear intent to create a security transaction in the mortgage itself. Thus *Ramier* is also inapplicable.

the unredeemed property has value at least equal to the debt plus costs of foreclosure, appellant would be unjustly enriched at respondent's expense due to the gross and obvious disparity between the value and redemption price of parcel 2.

### c. *Restoration of status quo*

■ Appellant argues that the parties cannot be returned to the status quo because of the alleged decrease in property values since the foreclosure sale, because rescission would revive the debt plus additional interest, and because there are vacancies in the property where none existed previously. However, with rental properties, the factors cited by appellant are potentially present in every rescission.

Further, we find unpersuasive appellant's reliance on *Truesdale v. Sidle*, 65 Minn. 315, 67 N.W. 1004 (1896). There, the supreme court refused to grant equitable relief. However, the precise relief requested by the mortgagee in *Truesdale* was: that the foreclosure sale be set aside, and a new sale directed,

> or that the [mortgagees] be permitted to deed the lots to the plaintiff upon being paid, within a reasonable time, the actual amount due on the mortgages.

*Id.* at 317, 67 N.W. at 1004 (emphasis added).

The *Truesdale* court's analysis of the decline in property value relates not to the issue of rescission, but to the issue of deeding over the property to the mortgagors in exchange for payment of the amounts due on the mortgages. Decline in economic value alone does not preclude rescission.

*Romkey* expressed, we believe, the essence of the *Peterson* court's concern with status quo, when it stated:

> The mistake being so obvious, and the rectification of it so easy without injury to plaintiff, equity clearly justifies the relief granted defendant. It consists simply of vacating the foreclosure and a decree for another by action. That procedure cannot deprive plaintiff of any right or advantage. He has not changed

his position on the faith of the foreclosure, and the case is not affected by the subsequently acquired rights of any third party.

*Romkey*, 170 Minn. at 439–40, 212 N.W. at 816.

We believe that those factors stressed in *Romkey* are critical in determining whether a return to the status quo can be achieved: first, reliance to a party's detriment upon the foreclosure, and second, any subsequently acquired rights of a third party. Appellant has raised no material fact issues regarding either of these *Romkey* factors.

### d. *Disastrous result*

■ The record indicates respondent intended that parcel 1 be bid at $36,000, parcel 4 be bid at $40,000, and that parcels 2 and 3 be bid at whatever remained on the debt plus attorney fees and costs. Instead, parcel 2 was bid and purchased by respondent for $40,000, and parcels 3 and 4 were bid and sold at $1,387,995.11.

Appellant asserts that respondent will suffer no "disastrous result" if appellant's redemption is allowed to stand[2] because the sum of the value of the remaining unredeemed property, the rents held by a receiver, and the redemption amount, is greater than the total debt outstanding. *Romkey* is of assistance in determining whether the value of the unredeemed property is, in fact, material in an action for rescission of a foreclosure sale. In *Romkey* the foreclosure notice erroneously described the subject property as "lots one (1) *and* seven (7) inclusive" rather than "lots one (1) *to* seven (7), inclusive." *Romkey* at 439, 212 N.W. at 816. There the omitted lots had a value "considerably larger than that of the rest of the property." *Id.* at 439, 212 N.W. at 816. The lower court's grant of vacation of the foreclosure was affirmed because, *inter alia*, the mistake was obvious, the mortgagor had not changed his position based on the foreclosure, and vacation of the foreclosure

---

2. Appellant's successful redemption of parcel 2 for $40,000 would secure title to appellant with no debt outstanding. *See* Minn.Stat. §§ 580.-225, 582.30, subd. 2 (1986).

would save the mortgagee the "unmerited loss * * * of the more valuable property subject to his lien." *Id.* at 439–40, 212 N.W. 816.

Additional language, perhaps best characterized as a comment on the holding of *Romkey,* however, is instructive:

[The writer] feels that in this case [mortgagee's] proof failed to show in him sufficient equity to justify relief. It is probably a case where the facts actually warranted the result, the deficiency being possibly a somewhat technical one of proof. The point is that [mortgagee] did not show that the premises actually sold in the foreclosure were not of sufficient value to repay him the mortgage debt with costs. If perchance that was the case, [mortgagee] certainly is not entitled to the relief granted.

*Id.* at 440, 212 N.W. 816. While silent as to the amount of the mortgage, the value of the various parcels, or the costs of foreclosure, *Romkey* does indicate that the value of the property omitted from foreclosure was considerably larger than that of the foreclosed property.

Also, *Romkey* appears to have found no factual question as to the "disastrous result" caused by the mistake in the foreclosure sale. In this case, the trial court in effect accepted respondent's argument that the "disastrous result" of *Peterson* was embodied in respondent's loss of property valued in excess of $600,000 caused by appellant's redemption for $40,000. This acceptance was cast in terms of "unjust enrichment," and it appears that the trial court either did not consider or did not deem material the question of whether there might be sufficient value in unredeemed property to satisfy respondent's debts and costs. However, a reasonable reading of *Romkey* leads us to conclude that there is an unresolved issue of material fact regarding the value of the unredeemed properties. This issue must be remanded for trial on the merits. We note that on remand the parties retain the right to address what date should be utilized in ascertaining the value of the unredeemed property.

## II.

Finally, appellant cites *Adelman v. Onischuk,* 271 Minn. 216, 135 N.W.2d 670 (1965), *appeal dismissed, cert. denied by Adelman v. Lower Minnesota River Watershed District,* 382 U.S. 108, 86 S.Ct. 257, 15 L.Ed.2d 192 (U.S.1965) (Mem.); *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.,* 260 Minn. 499, 110 N.W.2d 348 (1961); and *Williams v. Rolfe,* 257 Minn. 237, 101 N.W.2d 923 (1960) to argue that equitable relief should be denied when, as here, there is an adequate legal remedy. These cases support such a general rule. However, they do not specifically deny equitable relief to a mortgagee otherwise entitled to rescission of a foreclosure sale merely because the mortgagee allegedly may have a legal remedy against one other than the party from whom equitable relief is sought. In each case cited by appellant, the plaintiff's legal remedy was against the same party (or a closely related governmental entity) against which it sought equitable relief.

While we find no Minnesota case precisely on point, both *Peterson* and *Romkey* granted equitable relief to the mortgagee despite the possibility of a remedy at law against the mortgagee's attorneys. Moreover, there exists foreign authority which persuasively supports respondent's contention that to bar equitable relief the available remedy at law must be against the party from whom equitable relief is sought. *See Dudley v. Keller,* 33 Colo.App. 320, 325, 521 P.2d 175, 178 (1974). As such, the general rule prohibiting equitable relief where an adequate remedy at law is available is not applicable in this case.

## DECISION

The value of the subject properties which remain available to mortgagee to satisfy the mortgage debt plus interest and costs of the first foreclosure is a material fact issue preclusive of summary judgment.

Affirmed in part, reversed in part and remanded.